# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DECEDENT GREG COMBEST, THROUGH HIS HEIR LYNNE COMBEST, MICHELE CURRAN, ANTOINETTE DURBIN, GERALD FITZGERALD, DECEDENT TOMMY FOX, THROUGH HIS HEIR NANCY FOX, STEVE GILBERT, KIM GRAHAM, ALPHONSE HENKE, TRISHA HURST, ELLEN KOENEMAN, PAUL ALAGNA, GLEN BARKER, VIOLA BARKER, RICHARD BAZILE, LEROY BLAND, DORIS BLAND, MICHAEL CLAXTON, CHRISTINE CLAXTON, MELANIE COLE, PAM KRUSE, LEON LAVELY SR., LEON ELMER LAVELY JR., ANNE LUESLEY, KATHLEEN MAESSEN, DECEDENT LARRY MATHERS, THROUGH HIS HEIR CONNIE MATHERS, DECEDENT BARBARA MATTINGLY, THROUGH HER HEIR TAUNYA WILLIAMSON, HERBERT MCGILL, WANDA MCGILL, RICKY MOECKEL, SHIRLEY MOORE, MARY OSCKO, GERALD OSCKO, KIMBERLY SMITH, MARY STEVENS, SCOTT UNSER, DECEDENT SUSAN WODKE, THROUGH HER HEIR JULIE HARTWELL, LINDA YAKEL, KEVIN MCKENZIE, PEGGY MCKENZIE, ROY RIDEN, JEANNE RIDEN, ROBERT COFFELT, SHELIA COFFELT, DECEDENT DEBRA LEONARD, THROUGH HER HEIR OLIVIA LEONARD | ) ) ) ) CASE NUMBER: ) ) ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) |

*Plaintiffs,*
v.

MALLINCKRODT, INC., A DELAWARE CORP., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MALLINCKRODT, INC., A MISSOURI CORP., MALLINCKRODT LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MALLINCKRODT, INC., AND COTTER CORP.,

*Defendants.*

## COMPLAINT

COME NOW Plaintiffs, through counsel, and for their Complaint against Mallinckrodt,

Inc., a Delaware Corporation, individually and as Successor-in-interest to Mallinckrodt Inc., a

Missouri Corp., Mallinckrodt LLC, individually and as Successor-in-Interest to Mallinckrodt,

Inc. (collectively, "Mallinckrodt"), and Cotter Corp. ("Cotter"), state as follows based on

personal knowledge as to their own acts and on information and belief as to all other allegations:

## INTRODUCTION

1.      Plaintiffs bring this action against Defendants seeking redress for bodily injury

suffered by Plaintiffs as a result of Defendants' acts and omissions, including their negligent acts

and omissions, related to the processing, transport, storage, handling, and disposal of hazardous,

toxic, and radioactive materials in close proximity to residential neighborhoods in and around St.

Louis County, Missouri.

## REGULATORY HISTORY APPLICABLE TO MALLINCKRODT

2.      Congress first established the Atomic Energy Commission ("AEC") in the Atomic

Energy Act of 1946. In 1954 Congress replaced the Atomic Energy Act of 1946 with the Atomic

Energy Act of 1954 (the "1954 Act"). The 1954 Act redefined the atomic energy program by

ending the government monopoly on technical data and making the growth of a private

commercial nuclear industry an urgent national goal. The 1954 Act directed the AEC "to

encourage widespread participation in the development and utilization of atomic energy for

peaceful purposes." At the same time, the 1954 Act instructed the AEC to prepare regulations

that would protect public health and safety from radiation hazards.

3.      The 1954 Act assigned the AEC three major roles: to continue its weapons program,

to promote the private use of atomic energy for peaceful applications, and to protect public

health and safety from the hazards of commercial nuclear power. Those functions were in many

respects inseparable and incompatible, especially when combined in a single agency. The

competing responsibilities and the precedence that the AEC gave to its military and promotional

duties gradually damaged the agency's credibility on regulatory issues and undermined public

confidence in its safety program.

4.      The AEC's regulatory staff, which was created soon after the passage of the 1954 Act, confronted the task of writing regulations and devising licensing procedures rigorous enough to assure safety but flexible enough to allow for new findings and rapid changes in atomic technology. Within a short time the staff drafted rules and definitions on radiation protection standards. The AEC's radiation protection regulations were first issued for public comment in 1955 and became effective in 1957.[1]

5.      The regulations that became effective in 1957 were the first federal regulations governing radiation in the United States. During the entire period of 1942 through 1957, there were no federal safety standards related to radioactive material. No regulatory framework governing the safety of nuclear material or radiation existed in the United States before 1957.

6.      Mallinckrodt refined uranium at its facility in downtown St. Louis, Missouri between 1942 and 1957.

7.      According to a U.S. Army Corps of Engineers report, from 1942 to 1957, the plant had processed more than 50,000 tons of uranium product. Contaminated scrap metal and miscellaneous radioactive wastes were transported to SLAPS (defined herein) and buried on the western edge of the property.[2]

8.      Mallinckrodt transported and disposed of radioactive materials from its facility in downtown St. Louis, Missouri to a 21.74-acre site in the vicinity of the St. Louis Airport in north St. Louis County, Missouri, to a location known as SLAPS (defined herein) between approximately 1946 and 1957.

9.      Mallinckrodt stored the transported waste materials at the SLAPS between 1946 and 1957.

---

[1] Paragraphs 2 through 4 of this Complaint are verbatim statements or paraphrases of the Nuclear Regulatory Commission published at http://www.nrc.gov/about-nrc/short-history.html.
[2] http://www.mvs.usace.army.mil/Missions/CentersofExpertise/FormerlyUtilizedSitesRemedialActionProgram.aspx

10.     Mallinckrodt's acts and omissions between approximately 1942 and 1957 caused the release of hazardous, toxic, and radioactive substances into the environment along haul routes and in north St. Louis County, Missouri, thereby contaminating the air, soil, surface water, and ground water along the haul routes and in the area surrounding SLAPS and Coldwater Creek.

11.     Mallinckrodt's acts and omissions between approximately 1942 and 1957 proximately caused Plaintiffs to be exposed to hazardous, toxic, and radioactive substances in north St. Louis County, Missouri.

12.     Mallinckrodt's acts and omissions between approximately 1942 and 1957 proximately caused Plaintiffs to suffer the injuries described in this Complaint.

13.     Mallinckrodt's acts and omissions, which are described in this Complaint and which proximately caused the injuries complained of in this Complaint, occurred between 1942 and 1957.  Between 1942 and February 1957 and there were no federal regulations governing permissible levels of exposure of radiation to members of the public and there were no federal regulations governing permissible releases of radiation into the environment.

## REGULATORY HISTORY APPLICABLE TO COTTER

14.     The AEC issued new regulations for public comments in 1959 and made new regulations effective on January 1, 1961. According to the AEC, as set forth in 25 FR 8595-8604, the basic approach of the AEC in 10 CFR Part 20 with respect to levels of radiation and concentrations of radioactive materials in unrestricted (general public) areas limited levels of radiation and concentrations of radioactive material which could be created in unrestricted areas by licensees, without special authorization from the AEC, to specified low levels. These federal regulations, which appeared at 10 CFR §§ 20.105 and 20.106, governed releases of radiation in unrestricted areas.

4

15.     The hazardous, toxic, and radioactive wastes residues were removed from the SLAPS in various stages throughout the 1960s. Some of the radioactive waste was transported to property at 9200 Latty Avenue (now known as the HISS and the Futura Coatings Company properties) for storage.

16.     In 1969, Cotter purchased, stored, and processed the hazardous, toxic, and radioactive waste that had been transported from the SLAPS to Latty Avenue. Between 1969 and 1973, Cotter stored, processed, and transported hazardous, toxic, and radioactive wastes out of state and to West Lake Landfill in north St. Louis County, Missouri.

17.     Cotter's acts and omissions between approximately 1969 and 1973 caused the release of hazardous, toxic, and radioactive substances into the environment in north St. Louis County, Missouri, thereby contaminating the air, soil, surface water, and ground water in the area.

18.     Cotter's acts and omissions between approximately 1969 and 1973 proximately caused Plaintiffs to be exposed to hazardous, toxic, and radioactive substances in north St. Louis County, Missouri.

19.     Cotter's acts and omissions between approximately 1969 and 1973 proximately caused Plaintiffs to suffer the injuries described in this Complaint.

20.     Cotter's acts and omissions, which are described in this Complaint and which proximately caused the injuries complained of in this Complaint, occurred between 1969 and 1973. During the entire period between 1969 and 1973, no federal regulations governed the permissible or maximum amount of radiation to which a member of the general public could be exposed.  Instead, between 1969 and 1973, federal regulations governed levels of radiation and concentrations of radioactive material that could be created in unrestricted areas by licensees, without special authorization from the AEC.

21.     Between approximately 1957 and 1989, the numerical radiation dose threshold regarding members of the general public included a 500 milirem per year limit. In and after 1989, the numerical radiation dose threshold regarding members of the general public included and includes a 100 milirem per year limit.

## JURUSDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States, namely, the United States Price-Anderson Act ("PAA"), 42 U.S.C. § 2210 *et seq.*  This Court may also exercise subject matter jurisdiction over this action directly pursuant to Section 2210(n)(2) of the PAA, which provides the United States district court in the district where the nuclear incident takes place shall have original jurisdiction with respect to any public liability action arising out of or resulting from a nuclear incident.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper in this judicial district pursuant to 42 U.S.C. § 2210(n)(2) because the nuclear incidents giving rise to Plaintiffs' claims took place in this district.

## PARTIES

24.     The following persons are the Plaintiffs in this action:

A.1.     Lynne Combest is the widow and heir of decedent, Greg Combest. Mr. Combest passed away on December 14, 2012, at the age of fifty-five (55). Mr. Combest lived at a residence on 6840 Bower Court, Berkeley, MO from 1960 to 1978, at a residence on 7381 Normandie Court, Hazelwood, MO from 1981 to 1983, at a residence on 1155 Mundy Drive, Florissant, MO from 1983 to 2002, and at a residence on 1 Reeb Lane, Florissant, MO from 2002

6

until the date of his death in December of 2012; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Combest frequently engaged in outdoor recreational activities in and around Coldwater Creek, SLAPS, and HISS sites. Subsequently, Mr. Combest was diagnosed with multiple myeloma. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home, Mr. Combest developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Combest suffered severe physical injury, pain, suffering, and death.  As a result of Defendants' acts and omissions described in this Complaint, Mr. Combest was exposed to radiation in excess of federal dose limits. Specifically, Mr. Combest's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. Additionally, Plaintiff Lynne Combest suffered damages for loss of consortium during the time Mr. Combest suffered from his above referenced injuries.

A. 2.    Michele Curran currently resides in St. Charles, MO. Ms. Curran lived at a residence on 539 Haventree Lane, Hazelwood, MO from 1964 to 1982, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Ms. Curran frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Curran was diagnosed with a cystic astrocytoma. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her home, Ms. Curran has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Curran has suffered and

continues to suffer severe physical injury, pain, and suffering.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Curran was exposed to radiation in excess of federal dose limits. Specifically, Ms. Curran's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 3.    Antoinette Durbin currently resides in Saint Peters, MO. Ms. Durbin lived at a residence on 6010 Hancock Avenue, Berkeley, MO from 1950 to 1961, at a residence on 1465 Bobbinray Avenue, Florissant, MO from 1961 to 1968, at a residence on 15 Blanchette Drive, Florissant, MO from 1972 to 1979, at a residence on 1327 Springhurst Drive, Florissant, MO from 1979 to 1991, and at a residence on 1382 Kentucky Derby Drive, Florissant, MO from 1991 to 1997; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Ms. Durbin frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Durbin was diagnosed with thyroid cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Durbin has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Durbin has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Durbin was exposed to radiation in excess of federal dose limits.  Specifically, Ms. Durbin's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

8

A. 4.    Gerald Fitzgerald currently resides in Saint Peters, MO. Mr. Fitzgerald worked at the Hazelwood Police Department located on 415 Elm Grove Lane, Hazelwood, MO from July 1, 1981 until 2012, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Fitzgerald frequently engaged in outdoor activities in and around Coldwater Creek, SLAPS, and HISS sites. Subsequently, Mr. Fitzgerald was diagnosed with colon cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his occupational locations, Mr. Fitzgerald developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Fitzgerald has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Fitzgerald was exposed to radiation in excess of federal dose limits. Specifically, Mr. Fitzgerald's average annual exposure to radiation during the time he worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 5.    Nancy Fox is the widow and heir of decedent, Tommy Fox. Mr. Fox passed away on July 14, 2014, at the age of sixty-nine (69). Mr. Fox lived at a residence on 3569 St. Genevieve Lane, St. Ann, MO from 1962 to 1968, a residence on 8625 Jo Court, St. Ann, MO in 1968, and at a residence on 10277 Imperial Drive, St. Louis, MO from 1973 to 1994; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Fox worked at a business on 143 James McDonnell Blvd, Hazelwood, MO from 1963 to 1989, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Fox frequently engaged in outdoor activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Fox was diagnosed with throat

cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes and occupational location, Mr. Fox developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Fox suffered severe physical injury, pain, suffering, and death. As a result of Defendants' acts and omissions described in this Complaint, Mr. Fox was exposed to radiation in excess of federal dose limits. Specifically, Mr. Fox's average annual exposure to radiation during the time he lived and worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. Additionally, Plaintiff Nancy Fox suffered damages for loss of consortium during the time Mr. Fox suffered from his above referenced injuries.

    A. 6.    Steve Gilbert currently resides in Little Rock, AR. Mr. Gilbert lived at a residence on 6134 Shillington Court, Berkeley, MO from 1952 to 1965, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Gilbert frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Gilbert was diagnosed with an acoustic neuroma. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home, Mr. Gilbert has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Gilbert has suffered and continues to suffer severe physical injury, pain, and suffering.  As a result of Defendants' acts and omissions described in this Complaint, Mr. Gilbert was exposed to radiation in excess of federal dose limits. Specifically, Mr. Gilbert's average annual exposure to radiation during the

time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of

Defendants' conduct, was in excess of 500 millirem.

A. 7.    Kim Graham currently resides in Marysville, WA. Ms. Graham lived at a residence

on Beardsley Court, Ferguson, MO from 1977 to 1981, at a residence on 7549 Rowles Avenue,

Ferguson, MO from 1981 to 1983, and at a residence on 615 S. Castello Street, Florissant, MO

from 1984 until 1989; all in close proximity to Coldwater Creek and in close proximity to the

SLAPS and HISS. During that time, Ms. Graham frequently engaged in outdoor recreational

activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS.

Subsequently, Ms. Graham was diagnosed with ovarian cancer. As a result of Defendants'

negligence in the processing, distribution, transporting, storing, handling and/or disposing of

hazardous and radioactive substances into the area surrounding her homes, Ms. Graham has

developed significant and debilitating personal injuries. As a result of Defendants' reckless,

negligent, and grossly negligent conduct, Ms. Graham has suffered and continues to suffer severe

physical injury, pain, and suffering.  As a result of Defendants' acts and omissions described in

this Complaint, Ms. Graham was exposed to radiation in excess of federal dose limits.

Specifically, Ms. Graham's average annual exposure to radiation during the time she lived in

close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct,

was in excess of 500 millirem.

A. 8.    Alphonse Henke currently resides in Florissant, Missouri. Mr. Henke lived at a

residence on 502 St. Pierre Street, Florissant, MO from February 1, 1957 to 1985, at a residence

on 370 Rue St. Louis Street, Florissant, MO from 1985 to June of 2007, and at a residence on

502 St. Pierre Street, Florissant, MO from 2007 to present; all located in close proximity to

Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Henke

frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Henke was diagnosed with chronic myeloid leukemia. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes, Mr. Henke has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Henke has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Henke was exposed to radiation in excess of federal dose limits. Specifically, Mr. Henke average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 9.    Trisha Hurst currently resides in Galesburg, IL. Ms. Hurst lived at a residence on 1480 Wadsworth Drive, Ferguson, MO from April of 1969 to 1971, and at a residence on 3035 Durwood Drive, Florissant, MO from 1971 to 1987; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Hurst frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Hurst was diagnosed with breast cancer. Additionally, Ms. Hurst was diagnosed with colon cancer and ovarian cancer fewer than five years prior to the commencement of this action. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Hurst has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Hurst has suffered and continues to suffer severe physical injury, pain,

and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Hurst was exposed to radiation in excess of federal dose limits. Specifically, Ms. Hurst's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 10.  Ellen Koeneman currently resides in Saint Charles, MO. Ms. Koeneman lived at a residence on 3100 Canfield Drive, Ferguson, MO from 1957 to 1970, at a residence on 103 St. Maurice Lane, Florissant, MO from 1971 to 1975, and at a residence on 11675 Sheffield Drive, Florissant, MO from 1975 to 1983; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Ms. Koeneman frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Koeneman was diagnosed with colon cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Koeneman has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Koeneman has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Koeneman was exposed to radiation in excess of federal dose limits. Specifically, Ms. Koeneman's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 11.  Paul Alagna currently resides in St. Charles, MO. Mr. Alagna lived at a residence on 518 Fox Crest Drive, Hazelwood, MO from 1968 to 1971, and at a residence on 6458 Paddock Drive, Florissant, MO from 1971 to 1979; both in close proximity to Coldwater Creek and in

close proximity to the SLAPS and HISS. During those times, Mr. Alagna frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Alagna was diagnosed with brain cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes, Mr. Alagna has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Alagna has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Alagna was exposed to radiation in excess of federal dose limits. Specifically, Mr. Alagna's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 12.  Glen Barker currently resides in Brighton, IL. Mr. Barker worked for the McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Barker frequently engaged in work related activities in various MDC buildings, all of which were located in close proximity to SLAPS, HISS, and Coldwater Creek and all of which were on the corporate campus of MDC. Mr. Barker worked consecutively between the years of 1961 and 2007 for MDC. Subsequently, Mr. Barker was diagnosed with bladder cancer fewer than five years prior to the commencement of this action. As a result of Defendants' acts and omissions described in this Complaint, Mr. Barker has developed significant and debilitating personal injuries. As a result of Defendants' acts and omissions described in this Complaint, Mr. Barker suffered physical injury, pain, and suffering. As a result of Defendants' acts and omissions

14

described in this Complaint, Mr. Barker was exposed to radiation in excess of federal dose limits. Specifically, Mr. Barker's average annual exposure to radiation between 1961 and 2007, as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Viola Barker has been the wife of Mr. Barker. Viola Barker suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 13.  Richard Bazile currently resides in Breckenridge Hills, MO. Mr. Bazile lived at a residence on 8120 Gardner Lane, Berkeley, MO from approximately 1978 to 1991, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Bazile worked for the McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company from 1977 to 2010, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Bazile frequently engaged in outdoor and work related activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Bazile was diagnosed with multiple myeloma. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home and occupational location, Mr. Bazile has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Bazile has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Bazile was exposed to radiation in excess of federal dose limits. Specifically, Mr. Bazile's average annual exposure to radiation during the time he lived and worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 14.  Leroy Bland currently resides in Alton, IL. Mr. Bland worked for the McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Bland frequently engaged in work related activities in various MDC buildings, all of which were located in close proximity to SLAPS, HISS, and Coldwater Creek. Mr. Bland worked consecutively between the years of 1956 and 1996 for MDC. Subsequently, Mr. Bland was diagnosed with bladder cancer fewer than five years prior to the commencement of this action. Additionally, Mr. Bland was diagnosed with breast cancer. As a result of Defendants' acts and omissions described in this Complaint, Mr. Bland has developed significant and debilitating personal injuries. As a result of Defendants' acts and omissions described in this Complaint, Mr. Bland suffered physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Bland was exposed to radiation in excess of federal dose limits. Specifically, Mr. Bland's average annual exposure to radiation between 1956 and 1996, as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Doris Bland has been the wife of Mr. Bland. Doris Bland suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 15.  Mike Claxton currently resides in Hazelwood, MO. Mr. Claxton lived at a residence on 361 Chapel Ridge Drive, Hazelwood, MO from 1987 to 1989, and at a residence on 6123 Fee Fee Road, Hazelwood, MO from 1989 to present; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Claxton worked for the McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company from 1963 to present, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Claxton frequently engaged in outdoor activities in

and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Claxton was diagnosed with colon cancer. Additionally, Mr. Claxton was diagnosed with prostate cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes and occupational locations, Mr. Claxton has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Claxton has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Claxton was exposed to radiation in excess of federal dose limits. Specifically, Mr. Claxton's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Christine Claxton has been the wife of Mr. Claxton. Christine Claxton suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 16.  Melanie Cole currently resides in Saint Louis, MO. Ms. Cole lived at a residence on 1470 Boulder Drive, Florissant, MO from 1977 to 1999, at a residence on 7331 Normandie Court, Hazelwood, MO from 1999 to 2000, at a residence on 15562 97th Avenue, Florissant, MO from 2001 to 2002, and at a residence on 115 Reeb Lane, Florissant, MO from 2007 to 2008; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Cole frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Cole was diagnosed with thyroid cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive

substances into the area surrounding her homes, Ms. Cole has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Cole has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Cole was exposed to radiation in excess of federal dose limits. Specifically, Ms. Cole's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 17.  Pam Kruse currently resides in Lake Saint Louis, MO. Ms. Kruse lived at a residence on 75 St. Benedict Lane, Florissant, MO from 1962 to 1987, and at a residence on 3340 Brunswick Drive, Florissant, MO from 1987 to 1998; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Kruse frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Kruse was diagnosed with brain cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Kruse has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Kruse has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Kruse was exposed to radiation in excess of federal dose limits. Specifically, Ms. Kruse's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 18.  Leon Lavely, Sr. currently resides in Lonedell, MO. Mr. Lavely lived at a residence on 144 Elm Grove Lane, Hazelwood, MO from 1970 to 2009, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Lavely frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Lavely was diagnosed with prostate cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home, Mr. Lavely has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Lavely has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Lavely was exposed to radiation in excess of federal dose limits. Specifically, Mr. Lavely 's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 19.  Leon Elmer Lavely, Jr. currently resides in Hazelwood, MO. Mr. Lavely lived at a residence on 144 Elm Grove Lane, Hazelwood, MO from 1969 to 1993, and at a residence on 141 Foxtree Drive, Hazelwood, MO from 2005 to present; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Lavely frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Lavely was diagnosed with colon cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes, Mr. Lavely has developed significant and debilitating personal injuries. As a result of Defendants'

reckless, negligent, and grossly negligent conduct, Mr. Lavely has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Lavely was exposed to radiation in excess of federal dose limits. Specifically, Mr. Lavely 's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 20.  Anne Luesley currently resides in Florissant, MO. Ms. Luesley lived at a residence on 1460 Flicker Drive, Florissant, MO from 1961 to 1986, at a residence on 1155 Cedar Place, Florissant, MO from 1990 to 1993, and at a residence on 2415 Wedgwood Drive West, Florissant, MO from 1993 to present; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Luesley frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Luesley was diagnosed with thyroid cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Luesley has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Luesley has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Luesley was exposed to radiation in excess of federal dose limits. Specifically, Ms. Luesley's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 21.  Kathleen Maessen currently resides in Wentzville, MO. Ms. Maessen lived at a residence on 20 St. Alice Lane, Florissant, MO from December of 1965 to June of 1991, and at a residence on 7 Ridgelawn Court, Florissant, MO from October of 1992 to October of 1994; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Maessen frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Maessen was diagnosed with breast cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Maessen has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Maessen has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Maessen was exposed to radiation in excess of federal dose limits. Specifically, Ms. Maessen's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A.22.   Connie Mathers is the widow and heir of decedent, Larry Mathers. Mr. Mathers passed away on March 22, 2008, at the age of sixty-three (63. Mr. Mathers lived at a residence on 10 Chandler Court, Florissant, MO from April 1, 1967 to 1969, and at a residence on 15 Florisota Drive, Florissant, MO from April 28, 1969 to 2003; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Mathers frequently engaged in outdoor recreational activities in and around Coldwater Creek, SLAPS, and HISS sites. Subsequently, Mr. Mathers was diagnosed with colon cancer.

Additionally, Mr. Mathers was diagnosed with bladder cancer. As a result of Defendants'
negligence in the processing, distribution, transporting, storing, handling and/or disposing of
hazardous and radioactive substances into the area surrounding his homes, Mr. Mathers
developed significant and debilitating personal injuries. As a result of Defendants' reckless,
negligent, and grossly negligent conduct, Mr. Mathers suffered severe physical injury, pain,
suffering, and death. As a result of Defendants' acts and omissions described in this Complaint,
Mr. Mathers was exposed to radiation in excess of federal dose limits. Specifically, Mr.
Mathers's average annual exposure to radiation during the time he lived in close proximity to
Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of
500 millirem. Additionally, Plaintiff Connie Mathers suffered damages for loss of consortium
during the time Mr. Mathers suffered from his above referenced injuries.

A.23.   Taunya Williamson is the daughter and heir of decedent, Barbara Mattingly. Ms.
Mattingly passed away on March 24, 2013, at the age of sixty-three (63). Ms. Mattingly lived at
a residence on 555 Lula Drive, Florissant, MO from 1961 to 1973, in close proximity to
Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms.
Mattingly frequently engaged in outdoor recreational activities in and around Coldwater Creek,
SLAPS, and HISS sites. Subsequently, Ms. Mattingly was diagnosed with ovarian cancer. As a
result of Defendants' negligence in the processing, distribution, transporting, storing, handling
and/or disposing of hazardous and radioactive substances into the area surrounding her home,
Ms. Mattingly developed significant and debilitating personal injuries. As a result of Defendants'
reckless, negligent, and grossly negligent conduct, Ms. Mattingly suffered severe physical injury,
pain, suffering, and death. As a result of Defendants' acts and omissions described in this
Complaint, Ms. Mattingly was exposed to radiation in excess of federal dose limits. Specifically,

Ms. Mattingly's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 24.  Herbert McGill currently resides in Foristell, MO. Mr. McGill worked for the McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. McGill frequently engaged in work related activities in various MDC buildings, all of which were located in close proximity to SLAPS, HISS, and Coldwater Creek. Mr. McGill worked consecutively between the years of 1958 and 1993 for MDC. Subsequently, Mr. McGill was diagnosed with chronic myeloid leukemia. As a result of Defendants' acts and omissions described in this Complaint, Mr. McGill has developed significant and debilitating personal injuries. As a result of Defendants' acts and omissions described in this Complaint, Mr. McGill suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. McGill was exposed to radiation in excess of federal dose limits. Specifically, Mr. McGill's average annual exposure to radiation between 1958 and 1993, as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Wanda McGill has been the wife of Mr. McGill. Wanda McGill suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 25.  Ricky Moeckel currently resides in Pocahontas, IL. Mr. Moeckel lived at a residence on 2760 Robert Drive, Florissant, MO from 1963 to 1990, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Moeckel frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity

to the SLAPS and HISS. Subsequently, Mr. Moeckel was diagnosed with colon cancer. Additionally, Mr. Moeckel was diagnosed with lymphocytic leukemia. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home, Mr. Moeckel has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Moeckel has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Moeckel was exposed to radiation in excess of federal dose limits. Specifically, Mr. Moeckel's average annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 26.  Shirley Moore currently resides in Florissant, MO.  Ms. Moore lived at a residence on 8446 Redfire Drive, Berkeley, MO from 1966 to 1991, and at a residence on 4525 Parian Drive, Florissant, MO from 1991 to present; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Moore frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Moore was diagnosed with lung cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Moore has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Moore has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Moore was exposed to radiation in excess of federal dose limits.

Specifically, Ms. Moore's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 27.  Mary Oscko currently resides in Hazelwood, MO. Ms. Oscko lived at a residence on 5230 Villa Rosa, Hazelwood, MO from 1980 to 1984, at a residence on 2842 Foxwood Drive, Maryland Heights, MO from 1984 to 1986, and at a residence on 233 Alma Drive, Hazelwood, MO from June of 1986 to present; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Oscko frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Oscko was diagnosed with lung cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Oscko has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Oscko has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Oscko was exposed to radiation in excess of federal dose limits. Specifically, Ms. Oscko 's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Gerald Oscko has been the husband of Ms. Oscko. Gerald Oscko suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by his wife.

A. 28.  Kimberly Smith currently resides in Wentzville, MO. Ms. Smith lived at a residence on 1225 Gahan Drive, Florissant, MO from 1965 to 1983 and again in 1984, at a residence on

1750 Washington Street, Florissant, MO from 1989 to 2013; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Smith frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Smith was diagnosed with thyroid cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Smith has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Smith has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Smith was exposed to radiation in excess of federal dose limits. Specifically, Ms. Smith's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 29.  Mary Stevens currently resides in Saint Charles, MO.  Ms. Stevens lived at a residence on 441 North Dade Avenue, Ferguson, MO from 1974 to 1995, and at a residence on Raymond Drive, Florissant, MO from 1996 to 1998; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Stevens frequently engaged in outdoor recreational activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Stevens was diagnosed with brain cancer. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms. Stevens has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Stevens has suffered and continues to

suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Ms. Stevens was exposed to radiation in excess of federal dose limits. Specifically, Ms. Stevens's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 30.  Scott Unser currently resides in Viburnum, MO. Mr. Unser lived at a residence on 1040 Rogers Lane, Florissant, MO from 1971 to 1997, and at a residence on 2555 Valleybrook Drive, Florissant, MO from 1991 to 2006; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Unser worked at a business on 1627 Ventnor Place, Florissant, MO from 2002 to 2006, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Mr. Unser frequently engaged in outdoor activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Unser was diagnosed with chronic lymphocytic leukemia. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes and occupational location, Mr. Unser has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Unser has suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Unser was exposed to radiation in excess of federal dose limits. Specifically, Mr. Unser's average annual exposure to radiation during the time he lived and worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A.31.   Julie Hartwell is the daughter and heir of decedent, Susan Wodke. Ms. Wodke passed away on June 1, 2013, at the age of sixty-two (62). Ms. Wodke lived at a residence on 232 Buddie Avenue, St. Louis, MO from 1974 to 1993, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Wodke frequently engaged in outdoor recreational activities in and around Coldwater Creek, SLAPS, and HISS sites. Subsequently, Ms. Wodke was diagnosed with ovarian cancer fewer than five years prior to the commencement of this action. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her home, Ms. Wodke developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Wodke suffered severe physical injury, pain, suffering, and death. As a result of Defendants' acts and omissions described in this Complaint, Ms. Wodke was exposed to radiation in excess of federal dose limits. Specifically, Ms. Wodke's average annual exposure to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem.

A. 32.  Linda Yakel currently resides in Florissant, MO. Ms. Yakel lived at a residence on 190 Derhake Road, Florissant, MO from 1957 to 1972, and at a residence on 165 St. Luke Drive, Florissant, MO from 1973 to present; both in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms. Yakel frequently engaged in outdoor activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Ms. Yakel was diagnosed with breast cancer and ovarian cysts. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding her homes, Ms.

Yakel has developed significant and debilitating personal injuries. As a result of Defendants'

reckless, negligent, and grossly negligent conduct, Ms. Yakel has suffered and continues to

suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions

described in this Complaint, Ms. Yakel was exposed to radiation in excess of federal dose limits.

Specifically, Ms. Yakel 's average annual exposure to radiation during the time she lived in close

proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was

in excess of 500 millirem.

    A. 33.  Kevin McKenzie currently resides in Las Vegas, NV. Mr. McKenzie lived at a

residence on 2676 Garham Drive, St. Louis, MO from 1959 to approximately 1975, in close

proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During those

times, Mr. McKenzie frequently engaged in outdoor recreational activities in and around

Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. McKenzie

was diagnosed with chronic myeloid leukemia fewer than five years prior to the commencement

of this action. As a result of Defendants' negligence in the processing, distribution, transporting,

storing, handling and/or disposing of hazardous and radioactive substances into the area

surrounding his home, Mr. McKenzie has developed significant and debilitating personal

injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr.

McKenzie has suffered and continues to suffer severe physical injury, pain, and suffering. As a

result of Defendants' acts and omissions described in this Complaint, Mr. McKenzie was

exposed to radiation in excess of federal dose limits. Specifically, Mr. McKenzie's average

annual exposure to radiation during the time he lived in close proximity to Coldwater Creek, the

SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. At all

relevant times, Peggy McKenzie has been the wife of Mr. McKenzie. Peggy McKenzie suffered

and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 34.  Roy Riden currently resides in Saint Charles, MO. Mr. Riden lived at a residence on 2800 Walton Road, St. Louis, MO from 1957 to 1960, at a residence on Canter Way, St. Louis, MO from 1960 to 1962, at a residence on Prouhet Avenue, St. Louis, MO from 1962 to 1968, and at a residence on 1035 Canter Way, St. Louis, MO from 1968 to 1983; all in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Riden worked at McDonnell Douglas Corporation ("MDC"), who has since merged with The Boeing Company in Berkeley, MO consecutively from 1957 to 1993, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Riden frequently engaged in outdoor activities and work related activities in various MDC buildings, in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Riden was diagnosed with stomach cancer. Additionally, Mr. Riden was diagnosed with hypothyroidism fewer than five years prior to the commencement of this action. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his homes and occupational locations, Mr. Riden has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Riden suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Riden was exposed to radiation in excess of federal dose limits. Specifically, Mr. Riden's average annual exposure to radiation during the time he lived and worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Jeanne Riden

has been the wife of Mr. Riden. Jeanne Riden suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 35.  Robert Coffelt currently resides in Troy, MO. Mr. Coffelt lived at a residence on 181 Anistasia Drive, St. Louis, MO from 1964 to 1972, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. Additionally, Mr. Coffelt worked at The Boeing Company in Berkeley, MO from 1957 to 1999, in close proximity to Coldwater Creek and in close proximity to the SLAPS and HISS. During that time, Mr. Coffelt frequently engaged in outdoor activities in and around Coldwater Creek and in close proximity to the SLAPS and HISS. Subsequently, Mr. Coffelt was diagnosed with bladder cancer fewer than five years prior to the commencement of this action. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area surrounding his home and occupational locations, Mr. Coffelt has developed significant and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Coffelt suffered and continues to suffer severe physical injury, pain, and suffering. As a result of Defendants' acts and omissions described in this Complaint, Mr. Coffelt was exposed to radiation in excess of federal dose limits. Specifically, Mr. Coffelt's average annual exposure to radiation during the time he lived and worked in close proximity to Coldwater Creek, the SLAPS, and HISS as the result of Defendants' conduct, was in excess of 500 millirem. At all relevant times, Shelia Coffelt has been the wife of Mr. Coffelt. Shelia Coffelt suffered and continues to suffer damages for loss of consortium as a result of the injuries sustained by her husband.

A. 36.  Olivia Leonard is the daughter and heir of decedent, Debra Leonard. Ms. Leonard passed away on September 17, 2014, at the age of sixty-one (61). Ms. Leonard lived at a

residence on 8803 Airport Road, Berkeley, MO from 1956 to 1971, in close proximity to

Coldwater Creek and in close proximity to the SLAPS and HISS. During those times, Ms.

Leonard frequently engaged in outdoor recreational activities in and around Coldwater Creek,

SLAPS, and HISS sites. Subsequently, Ms. Leonard was diagnosed with ovarian cancer fewer

than five years prior to the commencement of this action. As a result of Defendants' negligence

in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and

radioactive substances into the area surrounding her home, Ms. Leonard developed significant

and debilitating personal injuries. As a result of Defendants' reckless, negligent, and grossly

negligent conduct, Ms. Leonard suffered severe physical injury, pain, suffering, and death. As a

result of Defendants' acts and omissions described in this Complaint, Ms. Leonard was exposed

to radiation in excess of federal dose limits. Specifically, Ms. Leonard's average annual exposure

to radiation during the time she lived in close proximity to Coldwater Creek, the SLAPS, and

HISS as the result of Defendants' conduct, was in excess of 500 millirem.

B.1.    Mallinckrodt, Inc., a Delaware Corporation, individually and as Successor-in-interest

to Mallinckrodt Inc., a Missouri Corporation, is a Delaware corporation with its principal place

of business in Mansfield, Massachusetts.  Upon information and belief, in 1986, Mallinckrodt

Missouri was broken up and sold to MI Holdings, Inc. and Mallinckrodt, Inc.  Upon information

and belief, Mallinckrodt Chemical Works is now known as or has been merged into MI Holdings

and/or Mallinckrodt, Inc.  Mallinckrodt Nuclear Corporation was formerly a wholly owned

subsidiary of Mallinckrodt Chemical Works.  Mallinckrodt Chemical Works and Mallinckrodt

Nuclear Corporation will be referred to collectively as "Mallinckrodt."

B.2.    Cotter Corporation ("Cotter"), a Colorado corporation with its principal place of

business in Englewood, Colorado, operates as a subsidiary of General Atomics, Inc., a California

32

corporation. It was purchased by and became a wholly owned subsidiary of Commonwealth

Edison in 1975. Through its various mining and milling operations, Cotter has produced

uranium, vanadium, molybdenum, silver, lead, zinc, copper, selenium, nickel, cobalt, tungsten

and limestone. In December 1969, Cotter purchased the remaining residues at 9200 Latty

Avenue and dried and shipped those residues to Colorado at a rate of approximately 400 tons per

day. B&K Construction Company was engaged by Cotter for this purpose.

## BACKGROUND

25.     During World War II, the nation began a top-secret project to build the first atomic

bomb.  At this time, the Army created the Manhattan Engineering District ("MED") to carry out

much of the work of the so-called "Manhattan Project."  After the war, the nation sought ways to

use nuclear energy for peaceful purposes and formed the Atomic Energy Commission ("AEC")

in 1946 to continue this nuclear research.  Some of this work was performed in the St. Louis

area.

26.     From 1942 to 1957, under contracts with the MED and/or the AEC, the Destrehan

Street Refinery and Metal Plant (which later became Mallinckrodt Chemical Works) processed

natural uranium into uranium oxide, trioxide, and metal uranium at a facility in downtown St.

Louis, Missouri. This facility became known as the St. Louis Downtown Site ("SLDS").  The

SLDS site became contaminated with hazardous, toxic, and radioactive substances as a result.

27.     In 1946, MED acquired the St. Louis Airport Site ("SLAPS"), a 21-acre site just

north of the St. Louis Airport, for storage of hazardous, toxic, and radioactive waste residues

from the SLDS. In subsequent years, the SLAPS and adjacent properties became contaminated

with hazardous, toxic, and radioactive substances as a result.

28.     During the 1960's, private companies purchased the hazardous, toxic and radioactive waste residues being stored at the SLAPS and began hauling them from the SLAPS to a site on Latty Avenue in Berkeley, Missouri (part of this site later became the Hazelwood Interim Storage Site ("HISS")). These waste residues, which contained valuable metals, were sold for their commercial value and shipped to various other destinations. The Latty Avenue site became contaminated with hazardous, toxic, and radioactive substances as a result.

29.     Transport and migration of hazardous, toxic, and radioactive waste residues to/from the SLDS, the SLAPS and the HISS also spread hazardous, toxic, and radioactive substances along haul routes to nearby Vicinity Properties ("VPs"). Even though the federal government was not responsible for this contamination, Congress directed that the government add these sites to the Formerly Utilized Sites Remedial Action Program ("FUSRAP").[3]

### THE ST. LOUIS FUSRAP SITES[4]

30.     Between 1942 and 1973, Defendants processed, stored, handled, and/or disposed of large volumes of hazardous, toxic, and radioactive materials in four separate geographical areas located in and around metropolitan St. Louis, Missouri.  The designations assigned to these sites are the St. Louis Downtown Site, the North St. Louis County Sites, the Madison Site, and the West Lake Landfill Site.

### The St. Louis Downtown Site ("SLDS"):

31.     The St. Louis Downtown Site is located in an industrial area on the eastern border of St. Louis, approximately 300 feet west of the Mississippi River. The property is about 11 miles

---

[3] The Formerly Utilized Sites Remedial Action Program (FUSRAP) is an environmental remediation program that addresses radiological contamination generated by activities of the Manhattan Engineer District and the Atomic Energy Commission ("MED/AEC") during development of the atomic weapons in the 1940s and 50s.

[4] The St. Louis FUSRAP Sites include: (1) the St. Louis Downtown Site ("SLDS"); (2) the St. Louis Airport Site ("SLAPS"); (3) the Hazelwood Interim Storage Site ("HISS"); (4) the Vicinity Properties ("VPs"); and (5) the Madison Site.

southeast of the SLAPS and the Lambert-St. Louis International Airport. The SLDS encompasses nearly 45 acres and is presently owned and operated by Mallinckrodt, Inc. (formerly Mallinckrodt Chemical Works). The property includes many buildings and other facilities involved in chemical production.

32.     From 1942 to 1957, Mallinckrodt used the SLDS for processing various forms of uranium compounds, for machining, and for recovery of uranium metal. In 1946, Mallinckrodt began the manufacture of uranium dioxide from pitchblende ore at a newly constructed plant at the SLDS.

33.     When Mallinckrodt ran out of space at the SLDS to store the hazardous, toxic and radioactive waste residues left over from the production process, a 21.7-acre tract of land (now known as the SLAPS) was procured in north St. Louis County to store hazardous, toxic and radioactive waste residues from uranium processing at the SLDS.

**The North St. Louis County Sites:**[5]

34.     The St. Louis Airport Site is an unincorporated 21.7-acre property located near the St. Louis Airport in north St. Louis County. The SLAPS is bounded by McDonnell Boulevard to the north, Banshee Road and Norfolk Southern Railroad on the south, and Coldwater Creek on the west.

35. Mallinckrodt used the SLAPS to store hazardous, toxic and radioactive waste residues generated by Mallinckrodt during uranium processing activities at the SLDS. These materials included, but were not limited to, pitchblende raffinate residues, radium-bearing residues, barium sulfate cake, Colorado raffinate residues and contaminated scrap.

---

[5] The North St. Louis County Sites consist of: (1) the St. Louis Airport Site; (2) the SLAPS Vicinity Properties (VPs); and (3) the Latty Avenue Properties.  In October 1989, EPA placed three of the North St. Louis County site properties (SLAPS, HISS, and Futura Coatings Company) on the Superfund National Priorities List ("NPL").

36. Mallinckrodt stored the radioactive materials in bulk on the open ground or buried at the western end (near Coldwater Creek) and at other parts of the SLAPS.

37. By 1960, there were approximately 50,000 empty drums and approximately 3,500 tons of miscellaneous contaminated steel and alloy scrap stored onsite at SLAPS.

38.     The SLAPS Vicinity Properties ("VPs") consist of approximately 78 properties, including properties along former haul routes between the SLAPS and the HISS, Coldwater Creek, the open fields (a former ball field area) immediately north of the SLAPS, and other SLAPS contiguous properties. The SLAPS VPs impacted by hazardous, toxic, and radioactive wastes are located along the haul routes between the SLAPS and the HISS, and include both recreational and residential properties. These haul routes include Eva Avenue, Frost Avenue, Hazelwood Avenue, McDonnell Boulevard, and Pershall Road.

39.     Coldwater Creek flows for 500 feet [153 meters] along the western border of the SLAPS. The creek originates 3.6 miles [5.8 kilometers] to the south of the SLAPS and continues for 15 miles [24 kilometers] in a northeasterly direction through the City of Hazelwood, the City of Florissant, unincorporated areas of St. Louis County, and along the northern edge of the community of Black Jack, until it discharges into the Missouri River. Coldwater Creek is generally accessible to the public, except for approximately 1.2 miles [1.9 kilometers], which flows under the Lambert-St. Louis International Airport. Coldwater Creek is contaminated with hazardous, toxic, and radioactive materials.

40.     The Latty Avenue Properties are located in an area approximately one half mile [1 kilometer] north of the St. Louis Airport in the towns of Hazelwood and Berkeley, Missouri. The Properties include: (1) the Hazelwood Interim Storage Site; (2) the Futura Coatings Site (used for

36

manufacturing plastic coatings); and (3) several Vicinity Properties on Latty Avenue. The Latty

Avenue Properties have elevated levels of residual uranium and thorium on site.

41.     From approximately 1961 to 1990, hazardous, toxic, and radioactive materials,

specifically those involved in the processing of columbium and tantalum (C-T), were used in

activities for commercial clients at the SLDS. The contamination present in the soil and

groundwater at the FUSRAP sites may be attributed to releases of radionuclides to the

environment during the uranium processing operations, the C-T processing operations, or

operations unique to the VPs.

42.     Hundreds of thousands of tons of hazardous, toxic, and radioactive wastes were

transported from the SLDS to the SLAPS for storage, including radium-bearing residues, refined

cake, barium sulfate cake, and C-liner slag. Over time, these hazardous, toxic, and radioactive

waste residues migrated directly from the SLAPS onto other sites (via Coldwater Creek) or were

deposited as the residues were hauled along transportation routes, contaminating the soils and

sediments of the Vicinity Properties.

43.     The SLDS and the North St. Louis County Sites have elevated levels of uranium,

thorium, and radium in soils and groundwater. The EPA has concluded that direct contact with,

or accidental ingestion of, contaminated soils or groundwater near these sites may pose health

risks to individuals.

## VI.
## SITE HISTORY

44.     Mallinckrodt processed uranium feed material for the production of uranium metal

from 1942 to 1957 under contracts with the Manhattan Engineer District and the Atomic Energy

Commission ("MED" / "AEC"). The work was performed at the Mallinckrodt Plant, located at

the SLDS. Within a year, the SLDS ran out of space to store the hazardous, toxic, and radioactive waste residues left over from the production process.

45.     Beginning in 1946, the hazardous, toxic, and radioactive waste residues left over from the production process at the SLDS were being transported to the SLAPS for storage.[6] Scrap metal, chemical drums, and other contaminated debris were placed in low areas at the SLAPS adjacent to Coldwater Creek on the western end of the property and covered with dirt to make a level storage area.

46.     By 1960, there were approximately 50,000 chemical drums and approximately 3,500 tons of miscellaneous contaminated steel and alloy scrap stored onsite at SLAPS directly adjacent to Coldwater Creek. Coldwater Creek is the major drainage mechanism for the SLAPS, the SLAPS VPs, and the Latty Avenue Properties. It has been designated a Metropolitan No-Discharge Stream. Through time, various meanders in Coldwater Creek were backfilled to support construction, resulting in commingling of the site soils and sediments with hazardous, toxic, and radioactive wastes brought to the SLAPS.

47.     These hazardous, toxic, and radioactive wastes residues were removed from the SLAPS in various stages throughout the 1960s. Initially, the residues were sold to Contemporary Metals Corporation ("Contemporary Metals").  Soon thereafter, their subsidiary, Continental Mining & Milling Company ("CMM"), began transporting the waste residues to property at 9200 Latty Avenue (now known as the HISS and the Futura Coatings Company properties) for storage.

---

[6] The following byproducts and scrap were transported mainly from the SLDS to the SLAPS for storage: padium-bearing residues ("K-65" residues); AM-7 pitchblende raffinate cake; AM-10 Colorado raffinate cake; AJ-4 barium sulfate cake (unleached) and AJ-4 barium cake (leached); C-liner slag that was created during metal firming operations; C-701 U scalping of magnesium fluoride, Japanese precipitates, Vitro residues from the Vitro Corporation's facility in Canonsburg, PA; and empty drums, contaminated steel and alloy scrap, and building debris.

48.     After CMM went into receivership, the Commercial Discount Corporation ("CDC") of Chicago, Illinois, took possession of its assets, including the Latty Avenue Property and the hazardous, toxic, and radioactive waste residues stored therein.

49.     In 1969, the remaining hazardous, toxic, and radioactive wastes residues at Latty Avenue were sold to the Cotter Corporation ("Cotter") of Canon City, Colorado. In 1970, Cotter employed B&K Construction Company of St. Louis, Missouri, to transport these waste residues out of state. By late 1970, most of the residues had shipped offsite, except for 10,000 tons of Colorado raffinate and 8,700 tons of leached barium sulphate raffinates.

50.     In 1973, Cotter disposed of approximately 47,700 tons of soil mixed with uranium ore processing residues, including leached barium sulfate, uranium, and thorium, into the West Lake Landfill. This radiologically contaminated soil was routinely used as cover for municipal wastes and other landfill operations.

51.     Since 1946, residues have migrated from the SLAPS (via runoff onto adjacent properties and Coldwater Creek or wind) or were released or otherwise deposited when material was transported along haul routes, contaminating the soil and sediments at the SLAPS VPs and the Latty Avenue Properties.

52.     During the relocation of waste material, improper handling and transportation from the SLAPS to the Latty Avenue Sites, caused contamination to spread along haul routes. Improper storage exacerbated the contamination and caused adjacent properties (the SLAPS and the Latty Avenue Vicinity Properties (VPs)) to be contaminated.

## INVESTIGATION OF CONTAMINATION

53.     In October 1989, Congress added the SLAPS, the HISS and the Futura Site to the U.S. EPA's NPL.

39

54.     In 1992, the Madison Site was added to the FUSRAP list slated for cleanup. Approximately two cubic yards of contaminated uranium and thorium dust were located on overhead surfaces. Forty cubic yards of contaminated dust and materials had to be sent offsite for disposal.

55.     In 1994, the Department of Energy ("DOE") issued a Remedial Investigation ("RI") Report summarizing the results of previous investigations conducted at the North St. Louis County Sites and SLDS. The RI Report concluded that contamination is present in both surface and subsurface soils at the North St. Louis County Sites.

56.     In 1995, DOE issued an RI Addendum Report to summarize the results of an additional investigation conducted to fill the data gaps identified in the RI Report. The activities associated with this investigation included, but were not limited to, soil sampling at the SLAPS VPs; sediment sampling in Coldwater Creek; installation of monitoring wells at the SLAPS; vegetation sampling along ditches next to the haul roads; and background soil and ground-water sampling. The results of the investigation confirmed the presence of widespread radioactive contamination of surface and subsurface soils at the North St. Louis County Sites.

## TOPOGRAPHY AND DRAINAGE OF CONTAMINANTS

57.     The North St. Louis County and the SLDS sites are located on a modest upland area south of the Missouri River floodplain. The upland area surrounds a topographic depression known as the Florissant Basin.

58.     Coldwater Creek is the major drainage mechanism for the SLAPS, the SLAPS VPs, and the Latty Avenue Properties. It has been designated a Metropolitan No-Discharge Stream. Coldwater Creek flows adjacent to the SLAPS and the SLAPS VPs, then meanders near the HISS, the Futura Site, and other Latty Avenue Properties and continues to flow through northern St. Louis County until it discharges into the Missouri River.

40

59.     Coldwater Creek floods areas of the North St. Louis County Sites including portions of the SLAPS, the HISS, the Futura Site, and several VPs. The runoff from precipitation that enters Coldwater Creek in a given unit of time greatly exceeds the predevelopment quantities. This runoff overloads Coldwater Creek and increases the likelihood of local and area-wide flooding.

60.     Upon information and belief, the SLAPS and the Latty Avenue VPs, including impacted areas along Coldwater Creek, were contaminated with radium, thorium and uranium. Investigations have determined that contamination levels at the North St. Louis County Sites exceed federal dose limits.

61.     On-site sampling at the SLAPS, the HISS and the Futura Sites found elevated levels of hazardous, toxic, and radioactive materials in the groundwater, soils, and air, in excess of regional isotope background values.

62.     Operations at the St. Louis FUSRAP Sites have included, but were not limited to, the processing, storing, handling and/or disposing of uranium, enriched uranium, and other radioactive materials constituting source, special nuclear, or nuclear by-product materials as defined in the Atomic Energy Act, 42 U.S.C. § 2011 *et seq.* These radioactive materials, their by-products, and their decay (or "daughter") products are highly toxic and carcinogenic.

63.     Operations at the St. Louis FUSRAP Sites have also involved the use of non-radioactive chemicals, many of which are classified as hazardous under applicable federal law. *See, e.g.,* 42 U.S.C. § 9601(14); 40 C.F.R. § 302.4 [including tables]; 42 U.S.C. § 6903(5); 40 C.F.R. § 261.3; and 40 C.F.R. Part 261, Subpart D.

64.     Defendants' processing, storage, handling and/or disposal of hazardous, toxic, and radioactive materials at the St. Louis FUSRAP Sites have generated significant quantities of substances that are highly toxic to humans and the environment and are carcinogenic.

65.     Throughout the history of St. Louis FUSRAP Sites, each Defendant (or its predecessor in interest) caused recurrent releases of hazardous, toxic, and radioactive materials into the environment, in complete disregard for applicable law and for the health and safety of the surrounding communities and the natural environment. These negligent, grossly negligent, and reckless releases occurred in various ways, including through direct and indirect discharges of radioactive and toxic materials into public water bodies, such as Coldwater Creek; the exposure of workers to these materials, who then in turn spread contamination outside the worksite; and the improper disposal of hazardous, toxic, and radioactive materials.

66.     These negligent, grossly negligent, and reckless releases have resulted in Plaintiffs' exposure to hazardous, toxic, and radioactive materials. Moreover, because of the long half-life of the radioactive substances involved, persons currently living near the St. Louis FUSRAP Sites have been, and will continue to be, exposed to these dangerous substances.

67.     Upon information and belief, the substances to which Plaintiffs and their communities were exposed include, but were not limited to, the natural forms and various isotopes of cesium, thorium, radium, uranium, and radon. Some of these substances were used in the conduct of Defendants' operations, and some were created as by-products or decay ("daughter") products.

## CAUSE OF ACTION PURSUANT TO THE PRICE ANDERSON ACT

68.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

69.     In 1957, Congress amended the Atomic Energy Act to implement its policy to foster private sector participation in the nuclear energy industry. These 1957 amendments became known as the Price-Anderson Act ("PAA"). The uranium, thorium, and other radioactive substances processed, handled, stored, and/or disposed by Defendants at the St. Louis FUSRAP Sites include nuclear by-product materials, special nuclear materials, and/or source materials. 42 U.S.C. § 2014(e), (z), (aa). Any release of these by-product, special nuclear, or source materials causing bodily injury, sickness, disease, death, loss or damage to property, or loss of use of property constitutes a "nuclear incident" under the terms of the Price-Anderson Act. 42 U.S.C. § 2014(q).

70.     Plaintiffs further assert that Defendants' acts and omissions and negligent releases of hazardous, toxic, and radioactive waste materials have exposed Plaintiffs to highly dangerous materials. Plaintiffs have suffered bodily injury, sickness, and disease, as a direct and proximate result of their exposures. Plaintiffs' cause of action therefore asserts legal liability based upon a "nuclear incident," or series of such incidents, and is consequently a "public liability action" within the terms of the PAA.

71.     Each Defendant's conduct constituted a "nuclear incident" within the meaning of the PAA because it was an occurrence within the United States causing bodily injury, sickness, disease, or death arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.

72.     Pursuant to the PAA, the substantive rules for decision in this action arising under 28 U.S.C. § 2210 shall be derived from the law of the State in which the nuclear incident involved occurred, namely, Missouri, unless such law is inconsistent with the provisions of such section.

43

73.     Missouri substantive rules for decision provide that a person is strictly liable for harm, injury, or damage arising from an abnormally dangerous activity. Missouri substantive rules for decision provide that handling nuclear materials constitutes an abnormally dangerous activity.

74.     Defendants' conduct in the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials posed significant risk of harm to persons living and working in the vicinity of the operation. The consequences of nuclear accidents or incidents to health, property, and the environment are extremely dire, and can be measured in millions, if not billions of dollars. It is not possible to eliminate all of the risk by taking reasonable precautions. Finally, the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials has never been a matter of common usage; indeed, private operators historically were not permitted to engage in such activities at all. The conduct of Defendants' activities at the St. Louis FUSRAP Sites constituted abnormally dangerous activities.

75.     In addition, with the knowledge of the environmental and health hazards associated with the processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials, Defendants chose to conduct their activities near residential communities such as Berkley, Hazelwood, and Florissant, Missouri. Although Defendants' activities were abnormally dangerous per se, the location of such activities in well-populated areas such as north St. Louis County, Missouri would independently have rendered them abnormally dangerous.

76.     As a direct and proximate result of Mallinckrodt's processing, handling, transportation, storage, and/or disposal of hazardous, toxic, and radioactive waste materials at

44

the St. Louis FUSRAP Sites between 1942 and 1957, there have been releases of such substances into the environment, thereby injuring Plaintiffs, whose injuries include actual present harm and increased risks of harm to their persons. These injuries constitute the type of harm the possibility of which made Mallinckrodt's activities abnormally dangerous.

77.     Mallinckrodt is therefore strictly liable to Plaintiffs for all damages which have resulted and which will continue to result from the processing, handling, storage, and/or disposal of radioactive, toxic, and hazardous substances at the St. Louis FUSRAP Sites.

78.     Missouri substantive rules for decision provide that a person who fails to use due care to avoid injuring another person may be held liable for anything which appears to have been the natural and probable consequence of his act or omission.

79.     Defendants owed to Plaintiffs a duty of due care which could only be satisfied by the legal, safe, and proper processing, handling, storage, and/or disposal of the radioactive, toxic, and hazardous substances in Defendants' possession. Defendants had a duty to prevent the discharge or release of such substances that might harm Plaintiffs. Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic, and hazardous substances, and to warn or notify Plaintiffs of the fact that discharges or releases of these substances had occurred and were likely to occur in the future.

80.     Further, Defendants had a duty to comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons processing, handling, storing, and/or disposing of hazardous, toxic, and radioactive waste materials.

81.     Defendants breached these duties by their negligent, grossly negligent, and reckless processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials at the St. Louis FUSRAP Sites. Such conduct was in utter non-compliance with

applicable federal, state, and local laws, regulations, and guidelines. Defendants' negligent, grossly negligent, reckless, and illegal conduct resulted in the dangerous release of hazardous, toxic, and radioactive substances into the communities surrounding the St. Louis FUSRAP Sites, including but not limited to Berkley, Hazelwood, and Florissant, Missouri. These actual and continued releases have subjected Plaintiffs to an unreasonable risk of harm, and to actual injuries to their persons. Defendants also failed to warn Plaintiffs of the actual and threatened releases of such hazardous, toxic, and radioactive substances and of the reasonably foreseeable effects of such releases, an omission that was negligent, grossly negligent, and reckless. Finally, Defendants failed to act to prevent their releases from harming Plaintiffs.

82.     According to an Army Corps of Engineers report, from 1976 until 1978, radiological investigations of SLAPS and Latty Avenue were performed. Contamination was found at both sites, along with elevated radionuclide concentrations onsite and north of the site in ditches along McDonnell Boulevard. The ditches were designated for remedial action under the FUSRAP program.[7]

83.     According to an NRC report published in 1994, a survey of the Latty Avenue property revealed radiation levels in excess of the NRC criteria for unrestricted use.[8]

84.     Defendants knew about the hazards associated with nuclear operations. The legislative history of the PAA, which was passed with the active participation of private companies involved in the nuclear power industry, is rife with references to the extreme consequences that could be expected in the event of a nuclear incident. Indeed, the gravity of such consequences was a major contributing factor to the passage of the PAA. These Defendants knew or should have known that their generation, management, storage, use,

---

[7] http://www.mvs.usace.army.mil/Missions/CentersofExpertise/FormerlyUtilizedSitesRemedialActionProgram.aspx
[8] See https://nrctracking.ornl.gov/tlts/PDFs/DL-032394_01.pdf

disposal, releases, or discharges of radioactive, toxic, and hazardous substances in connection with their operations at the St. Louis FUSRAP Sites would result in actual injuries and increased risks to the persons, property, and economic interests of the public without taking proper safety precautions.

85.     Defendants' acts and omissions and their negligence were a direct and proximate cause of Plaintiffs' injuries causing both actual present harm and/or creating an increased risk of harm to  person. Plaintiffs are entitled to recover damages for such injuries.

86.     As a direct and proximate result of Defendants' conduct described in this Complaint, Plaintiffs have suffered and/or will continue to suffer great physical pain and suffering, incurred hospital, medical, pharmaceutical, and other expenses. Further, prior to the onset of their symptoms, Plaintiffs were extremely active and participated in numerous hobbies and activities, and as a result of their injuries, Plaintiffs were and are unable to engage in said activities, in which their participation was normal prior to developing symptoms and injuries resulting from exposure to toxic, hazardous, and radioactive substances.

87.     Because Defendants' conduct was intentional, malicious, grossly negligent, and reckless, Plaintiffs seek punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, for general damages, special damages, punitive and exemplary damages, prejudgment interest, costs of the action, and such further relief as this Court deems proper.

June 26, 2015                                    Respectfully submitted,

/s/ Kenneth J. Brennan
Tor Hoerman Law LLC
Kenneth J. Brennan, #47523MO
Eric M. Terry, # 57102MO
Tyler Schneider, #6313923IL

101 W. Vandalia Street, Suite 350
Edwardsville, IL 62025
Telephone: (618) 656-4400
kbrennan@torhoermanlaw.com
eterry@torhoermanlaw.com
tschneider@torhoermanlaw.com


Christopher W. Byron
Eric J. Carlson
BYRON AND CARLSON, LLC
411 St. Louis Street
Edwardsville, IL 62025
618-655-0600
Fax: 618-655-4004
cwb@byroncarlson.com
ejc@byroncarlson.com


Troy E. Walton
SCHOEN AND WALTON, LLC
412 Missouri Ave
East St. Louis, IL 62201
618-274-0434
Fax: 618-274-8369
Email: twalton@schoenwalton.com
ATTORNEYS FOR PLAINTIFFS

Gregory A. Cade
Larry Wright
Kevin B. McKie
ENVIRONMENTAL LITIGATION
GROUP, P.C.
3529 Seventh Avenue South
Birmingham, AL 35222
205-328-9200
Fax: 205-328-9456
Email: gregc@elglaw.com
Email: kmckie@elglaw.com
ATTORNEYS FOR PLAINTIFFS